Filed 8/3/26  Rosas v. Beverly Law CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| GUADALUPE ROSAS et al.,<br><br>        Plaintiffs and Appellants,<br><br>        v.<br><br>BEVERLY LAW et al.,<br><br>        Defendants and Respondents. | B350611<br><br>(Los Angeles County Super. Ct. No. 21STCV07083) |

APPEAL from judgment of the Superior Court of Los Angeles County, Lia Martin, Judge.  Affirmed.

Law Offices of Mark B. Plummer and Mark B. Plummer for Plaintiffs and Appellants.

Law Offices of Howard A. Kapp, Howard A. Kapp; Beverly Law and Michael Shemtoub for Defendants and Respondents.

* * * * * *

Two clients hired an attorney to represent them in a personal injury action.  By September 2017, they received letters from the attorney reporting that he had settled the action notwithstanding their direction that they take the case to trial.  They criticized him for mishandling the case, and had no further communication.  More than two years later, in February 2021, they sued the attorney for legal malpractice.  The trial court dismissed the clients' lawsuit as untimely.  Because this was correct, we affirm.

FACTS AND PROCEDURAL BACKGROUND

## I.     Facts

### A.     *The accident*

In July 2012, plaintiffs Cristina Rosas and her mother Guadalupe (the Rosas) were injured by a hit-and-run driver in a rear-end collision in Los Angeles.  At the time, Cristina[1] was starring in a martial arts film called "Kill the Dragon."  Due to her injuries, she was unable to continue filming, which resulted in losses both to her and to Guadalupe, who was also her manager.

### B.     *The original lawsuit*

In June 2013, the Rosas retained Michael Shemtoub, who does business as Beverly Law and Wilshire Law Group, to sue the driver at fault for the accident.  Shemtoub filed a complaint on their behalf shortly thereafter (the personal injury action).

### C.     *The settlement*

In January 2017, Cristina told Shemtoub that she had moved to Puerto Rico, and that she "d[id] not mind to have [her]

---

[1]     Because the parties share a last name, we use first names to avoid confusion.  No disrespect is intended.

2

cause of action dismissed with prejudice." Shemtoub continued representing both Cristina and Guadalupe in the lawsuit, but from that point forward, Guadalupe spoke on Cristina's behalf.

On February 1, 2017, the parties filed a notice of settlement in the personal injury action. Although Shemtoub states that Guadalupe had authorized him, in a January 2017 phone call, to accept settlements for $23,000 and $22,000 (for Guadalupe and Cristina, respectively), the Rosas state that, in "mid-2017," they had instructed Shemtoub to reject those settlement offers and proceed to trial to get more money—at which point Shemtoub had told them "it would take a while" to get a trial date.

On May 23, 2017, a case manager at Beverly Law sent Guadalupe an email providing a "status on [the] case." The email informed Guadalupe that Shemtoub was "waiting on the signed settlement memo" and "waiting on [her] to sign the release so we can receive the check from the insurance company." Guadalupe responded two days later, stating she had "no idea" "where we stand" "at this point."

On July 10, 2017, the superior court dismissed the lawsuit pursuant to the February 2017 notice of settlement.

### D. *Post-settlement communications*

In late August and early September 2017, respectively, Guadalupe and Cristina received copies of letters that Beverly Law sent to their medical providers seeking to resolve the providers' outstanding liens. Each letter stated that "[t]he case settled for" and then listed the respective settlement amounts— $23,750 for Guadalupe, and $22,000 for Cristina.

On October 11, 2017, Guadalupe sent an email to a case manager at Beverly Law. In that email, she took issue with the "fraudulent billings" on her and Cristina's medical bills, said she

3

would not sign a release, and stated, "[w]hatever you negotiated is not cleared."

Four months later, on February 27, 2018, Guadalupe sent Shemtoub an email stating: "We have huge discrep[a]ncies as to what you failed to disclose[]. As of today, I place you on notice to clear this matter in [an] amicable manner. Instead, you place deaf ears to money that you appar[e]ntly received and have failed to deliver to us. Worst, we have never settle[d] with the insurance . . . . You are going to be responsible for the mishand[]ling of my case."

There were no further commendations between Shemtoub and the Rosas until October 2020.

### E.     *The driver's restitution hearing*

In October 2020, the Rosas were told that the driver they had sued had been convicted of a crime and that there would be a restitution hearing, to which they should bring their medical bills and receipts. When the Rosas arrived in court, the driver said that the Rosas had already settled their claims against him with his insurance company.

Guadalupe contacted Shemtoub, who told her that the case had settled in 2017, with her and Cristina's authorization. Shemtoub claims that on January 20, 2018, his firm sent the Rosas settlement memoranda detailing the settlement amounts with deductions for medical bills and attorney fees, but, because they refused to sign the memoranda and approve the disbursements, he could not send the checks, and his "hands were completely tied."

After this conversation, Shemtoub sent Guadalupe a $9,446.55 check dated July 25, 2020 for her share of the 2017 settlement. Cristina never received her share.

4

## II. Procedural Background

### A. *Complaint*

The Rosas filed a complaint against Shemtoub, Beverly Law, and Wilshire Law Group (collectively, the attorneys) on February 19, 2021. In the operative first amended complaint, they asserted causes of action for legal malpractice and unlawful business practices under the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.), alleging that the attorneys settled their claims without their knowledge or permission and kept the funds for themselves, contrary to their representations that they were "elite" attorneys ready to try the case.[2]

### B. *Summary judgment*

On February 13, 2024, Shemtoub and Beverly Law moved for summary judgment on the grounds that the Rosas' claims were barred by Code of Civil Procedure[3] section 340.6's one-year statute of limitations. In opposition, the Rosas argued that (1) the statute of limitations had not started to run until October 2020, when they claim to have first discovered the misconduct, and (2) the limitations period was in any event tolled until October 2020 because they believed that Shemtoub was still representing them, awaiting a trial date or disbursement of settlement funds.

After holding a hearing on April 30, 2024, which the Rosas' attorney did not attend, the trial court granted summary judgment. The court ruled that (1) a one-year limitations period

---

2    The original complaint also plead a cause of action for conversion, but the Rosas did not include that claim in the first amended complaint.

3    All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

5

applied to all of the Rosas' claims, (2) the statute of limitations began to run in February 2018 because Gaudalupe's email that month "evidence[d] [the Rosas'] awareness of an actual injury" due to "a plethora of alleged wrongdoings," and (3) the limitations period was not tolled due to continued representation because the Rosas "could not have a reasonable expectation that [Shemtoub and his firm] were providing any further legal services with regard to the settled and dismissed matter."

The Rosas' motion for reconsideration of this ruling was denied on May 30, 2025.

### D.  *Appeal*

After the trial court entered judgment in favor of Shemtoub, Beverly Law and Wilshire Law Group on October 6, 2025,[4] the Rosas timely appealed.

### DISCUSSION

The Rosas argue that the trial court erred in granting summary judgment.  A party is entitled to summary judgment if it can "show that there is no triable issue as to any material fact" and it "is entitled to a judgment as a matter of law."  (§ 437c, subd. (c).)  A defendant moving for summary judgment may meet this burden by showing that the undisputed facts establish "a complete defense to the cause of action."  (*Id.*, subd. (p)(2).)  We independently review the trial court's order granting summary judgment, "liberally construing the evidence in support of the

---

4      Default was entered against Wilshire Law Group on July 20, 2022 and set aside on May 30, 2025.  The parties subsequently stipulated that the summary judgment order apply to Wilshire Law Group "in the same manner and to the same extent" as to the other defendants, and Wilshire Law Group was included in the final judgment.

6

party opposing summary judgment and resolving doubts concerning the evidence in favor of that party." (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)

## I.     Applicable Statute of Limitations

A claim for legal malpractice must be filed within (1) "one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission," or (2) "four years from the date of the wrongful act or omission"—whichever comes first. (§ 340.6, subd. (a).) This limitations period begins to run once the plaintiff "'has a suspicion of wrongdoing'" (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 685), even if the plaintiff is not yet aware of the specific facts or legal theories underlying their claim (*Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793, 818; *Village Nurseries v. Greenbaum* (2002) 101 Cal.App.4th 26, 42-43).

Section 340.6's limitations period is tolled, however, during any period when the attorney "continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred." (§ 340.6, subd. (a)(2).) The purpose of this tolling exception is to avoid tasking clients with rushing to the courthouse to sue their attorneys, which might "disrupt an ongoing attorney-client relationship." (*Hensley v. Caietti* (1993) 13 Cal.App.4th 1165, 1171.) An attorney no longer continues to represent a plaintiff (and the tolling exception no longer applies) when the lawyer formally substitutes out as counsel and simultaneously stops all work for the client (*Engel v. Pech* (2023) 95 Cal.App.5th 1227, 1236; *Shaoxing City Maolong Wuzhong Down Products, Ltd. v. Keehn & Associates, APC* (2015) 238 Cal.App.4th 1031, 1039; cf. *Nguyen v. Ford* (2020) 49

7

Cal.App.5th 1, 13 [formal withdrawal does not terminate relationship if attorney continues to do work for the client]), or when the client terminates the lawyer (*Wang v. Nesse* (2022) 81 Cal.App.5th 428, 439).  But where, as in this case, there is no such formal severance of the relationship by the attorney or the client, the determination of whether an attorney will be found to be continuing to represent the client turns on whether an objectively reasonable person in the client's position would believe that she had an """"ongoing *mutual* [attorney-client] relationship"""" making it reasonable to anticipate that the attorney would be pursuing tasks """"in furtherance of the relationship"""" (in which case the tolling exception applies) (*Shaoxing City*, at p. 1038; *Wang*, at p. 440) or, instead, an objectively reasonable person in the client's position would have """"no *reasonable* expectation that the attorney [would] provide further legal services"""" to her, such as when the attorney has "complet[ed] the tasks for which" he was retained (in which case the tolling exception would not apply) (*Nyugen*, at p. 14; *Wang*, at p. 440; *Gonzalez v. Kalu* (2006) 140 Cal.App.4th 21, 28).  (See generally *Hensley*, at p. 1172 ["the question of representation should be viewed from the perspective of the client"].)  The test turns on what an objectively reasonable client would believe—not on the client's subjective beliefs.  (*Nyugen*, at p. 14.)  Although whether a client has a reasonable expectation that her attorney will provide further legal services on a matter is typically a question of fact, it may be decided on summary judgment where the undisputed facts indicate no such reasonable expectation of further services as a matter of law.  (*Kalu*, at p. 31.)

This limitations period applies to any claim—regardless of the label of the cause of action—that "necessarily depend[s] on

8

proof that an attorney violated a professional obligation in the course of providing professional services." (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1236-1237; *Austin v. Medicis* (2018) 21 Cal.App.5th 577, 586.)

## II.    Analysis

The trial court properly granted summary judgment for the attorneys based on statue of limitations grounds.

As a threshold matter, the court correctly determined that section 340.6 applies to the Rosas' legal malpractice *and* CLRA claims because both rest on the same allegations that Shemtoub and his firms violated professional standards.[5]

More to the point, the trial court properly determined that the Rosas' claim was barred by section 340.6's one-year limitations period. It is undisputed that Guadalupe, in her February 2018 email at the latest, told Shemtoub that she believed there were "huge discrep[a]ncies as to what [he] failed to disclose[]" and that he had "mishand[led] . . . [her] case." This constitutes a suspicion of wrongdoing that started the one-year clock ticking.

That clock was not tolled by the continuing representation exception. To be sure, there was no formal substitution or formal termination of the attorney-client relationship. But the undisputed facts establish, as a matter of law, that an objectively reasonable person in the Rosas' position would have "no reasonable expectation" that Shemtoub or his firm would provide them further legal services. Although the Rosas both indicated

---

[5]    Because the Rosas decided not to pursue their conversion claim, the holding of *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1229-1230 that section 340.6 does not apply to conversion claims does not assist them.

9

that they informed Shemtoub in "mid-2017" that they wished to reject the settlement and go to trial, it is undisputed that the Rosas subsequently received the August and September 2017 letters reporting that their "case[s had] settled." It is undisputed that Guadalupe's subsequent communications expressed displeasure about the settlement but expressed no expectation of an upcoming trial. And it is undisputed that Shemtoub did *nothing* and had no contact with the Rosas from the last email Guadalupe sent in February 2018 until the Rosas contacted him in the fall of 2020. An objectively reasonable client would have no reasonable expectation that her attorney would provide further legal services if, as happened here, (1) the attorney told the client that he had settled the case (even if over the client's objection), and (2) the attorney subsequently did nothing and had no contact with the client for the ensuing two years.

The declarations of Cristina and Guadalupe submitted in this case indicating that they did not learn of the settlement until October 2020 and believed that Shemtoub had been lining up a trial date for them in the previous two-plus years are of no moment. They reflect the Rosas' *subjective* belief—and do not create a triable issue of fact as to whether a reasonably objective client getting notice that a case has "settled," followed by nearly three years of no action and no communication, would believe that the attorney would complete additional services.

The Rosas assert that an objectively reasonable client would believe that the attorney-client relationship was "ongoing" until such time as the attorney sent the client the settlement funds, such that Shemtoub's failure to do so here means that the tolling exception applies. We disagree. The question is whether an objectively reasonable person in the Rosas' position would

10

expect Shemtoub to be taking further action.  Here, Guadalupe—speaking on behalf of herself and Cristina—unequivocally told Shemtoub that they would not sign the releases, and she had previously received an email indicating that "the check from the insurance company" was contingent upon signing the release.  No objectively reasonable client would believe that her attorney was undertaking a task that the client herself had rendered impossible.

## DISPOSITION

The judgment is affirmed.  Respondents are entitled to their costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P. J.
HOFFSTADT


We concur:


_____, J.
MOOR


_____, J.
KIM (D.)